# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Matthew McNeely, *et al.*,

                      Plaintiffs,        Case No. 24-11596

v.                                 Judith E. Levy
                                   United States District Judge

FCA US, LLC,

                                 Mag. Judge David R. Grand
              Defendant.

_____/

## OPINION AND ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO COMPEL ARBITRATION, DENYING DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1), AND DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) [22]

Plaintiffs Matthew McNeely, Claudine Sheridan, Angela Boonie, Brian Hickman, Kenneth Lake Jr., Scott Beatty, Douglas Bauman, Jason Short, Travis Silver, Edgar Ortega, Kenneth Wagner, Ion Baleanu, Krista Marcello, Scott Sears, Connie Starr, and Howard Useman[1] bring this proposed nationwide class action lawsuit against Defendant FCA US

---

[1] Plaintiffs Sharon Brenneman, Scott Reid, and Lisa Bostelman voluntarily dismissed their claims. (ECF Nos. 29, 37.)

LLC, alleging that certain vehicles manufactured, distributed, and sold by Defendant contain a defect related to the vehicles' multimedia and video interface called Uconnect. (ECF No. 20.)

Before the Court is Defendant's motion to compel arbitration, or in the alternative, to dismiss the first amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 22.) The motion is fully briefed. (ECF Nos. 24, 27.) The parties also filed various notices regarding supplemental authority. (ECF Nos. 30, 31, 32, 33, 35, 36, 38, 39, 40.)

For the reasons set forth below, Defendant's motion to dismiss pursuant to Rule 12(b)(1) is denied, Defendant's motion to compel arbitration is denied without prejudice, and Defendant's motion to dismiss pursuant to Rule 12(b)(6) is denied without prejudice. (ECF No. 22.)

## I.   Background

Plaintiffs bring this proposed class action on behalf of themselves and others who purchased or leased a "Class Vehicle," defined in the amended complaint as the following vehicles that are equipped with the Uconnect infotainment system:

2

- 2021-2024 Chrysler Pacifica

- 2022-2024 Ram pickup trucks (1500, 2500, 3500)

- 2022-2024 Ram Chassis Cab

- 2022-2024 Ram ProMaster

- 2022-2024 Jeep Wagoneer and Grand Wagoneer

- 2022-2024 Jeep Compass

- 2022-2024 Jeep Grand Cherokee and Jeep Grand Cherokee L

- 2022-2024 Dodge Durango

- 2023-2024 Dodge Hornet

(ECF No. 20, PageID.597.) Uconnect is an "infotainment system," meaning that it is a "multimedia and video interface . . . in the Class Vehicles' center console." (*Id.* at PageID.597–598.) It has many purposes—it displays visuals from the Vehicle's backup camera, controls the audio, radio, and navigation systems, and connects to the user's phone for media and phone calls. (*Id.* at PageID.598–600.) Plaintiffs allege that the Class Vehicles' Uconnect system is extremely flawed and malfunctions in a variety of ways, such as only operating "intermittently" or becoming completely inoperable. (*Id.* at PageID.600.) For example, some Plaintiffs claim that their Uconnect display freezes, does not

3

respond to touch, only displays a black screen, or does not connect to cell phones. Issues with the Uconnect system constitute the "Defect."

Plaintiffs' amended complaint contains the following counts:

| Count | Claim | Plaintiffs |
|---|---|---|
| 1 | Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* | All individual plaintiffs and the putative national class |
| 2 | Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* | Beatty, Hickman, Lake, and the putative Florida subclass |
| 3 | Breach of the implied warranty of merchantability, Fla. Stat. § 672.314 | Beatty, Hickman, Lake, and the putative Florida subclass |
| 4 | Florida common law fraud/fraudulent omission | Beatty, Hickman, Lake, and the putative Florida subclass |
| 5 | Florida common law unjust enrichment | Beatty, Hickman, Lake, and the putative Florida subclass |
| 6 | Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 1 *et seq.* | McNeely, Baleanu, and the putative Massachusetts subclass |
| 7 | Breach of the implied warranty of merchantability, Mass. Gen. Laws ch. 106, § 2-314[2] | McNeely, Baleanu, and the putative Massachusetts subclass |
| 8 | Massachusetts common law fraud/fraudulent omission | McNeely, Baleanu, and the putative Massachusetts subclass |
| 9 | Massachusetts common law unjust enrichment | McNeely, Baleanu, and the putative Massachusetts subclass |

---

[2] The amended complaint cites to this statute as "Alm Gl. Ch. 106, § 2-314." (ECF No. 20, PageID.718.)

4

| 10 | New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.* | Sheridan and the putative New Jersey subclass |
| 11 | Breach of the implied warranty of merchantability, N.J. Stat. Ann. § 12A:2-314 | Sheridan and the putative New Jersey subclass |
| 12 | New Jersey common law fraud/fraudulent omission | Sheridan and the putative New Jersey subclass |
| 13 | New Jersey common law unjust enrichment | Sheridan and the putative New Jersey subclass |
| 14 | New York Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349 | Marcello and the putative New York subclass |
| 15 | Breach of the implied warranty of merchantability, N.Y. U.C.C. §§ 2-314, 2-A-212[3] | Marcello and the putative New York subclass |
| 16 | New York common law fraud/fraudulent omission | Marcello and the putative New York subclass |
| 17 | New York common law unjust enrichment | Marcello and the putative New York subclass |
| 18 | Oregon Unfair Trade Practices Act, Or. Rev. Stat. § 646.605 *et seq.* | Silver and the putative Oregon subclass |
| 19 | Breach of the implied warranty of merchantability, Or. Rev. Stat. § 72.3140 | Silver and the putative Oregon subclass |
| 20 | Oregon common law fraud/fraudulent omission | Silver and the putative Oregon subclass |
| 21 | Oregon common law unjust enrichment | Silver and the putative Oregon subclass |
| 22 | Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. § 201-1 *et seq.* | Boonie and the putative Pennsylvania subclass |

---

[3] The amended complaint cites to this statute as "N.Y. U.C.C. [§] 2A-212." (ECF No. 20, PageID.735.)

| 23 | Pennsylvania implied warranty of merchantability, 13 Pa. Cons. Stat. Ann. § 2314 | Boonie and the putative Pennsylvania subclass |
|---|---|---|
| 24 | Pennsylvania common law fraud/fraudulent omission | Boonie and the putative Pennsylvania subclass |
| 25 | Pennsylvania common law unjust enrichment | Boonie and the putative Pennsylvania subclass |
| 26 | Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.* | Bauman and the putative Tennessee subclass |
| 27 | Breach of the implied warranty of merchantability, Tenn. Code Ann. § 47-2-314 | Bauman and the putative Tennessee subclass |
| 28 | Tennessee common law fraud/fraudulent omission | Bauman and the putative Tennessee subclass |
| 29 | Tennessee common law unjust enrichment | Bauman and the putative Tennessee subclass |
| 30 | Texas Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code § 17.41 *et seq.* | Short and the putative Texas subclass |
| 31 | Breach of the implied warranty of merchantability, Tex. Bus. & Com. Code § 2.314 | Short and the putative Texas subclass |
| 32 | Texas common law fraud/fraudulent omission | Short and the putative Texas subclass |
| 33 | Texas common law unjust enrichment | Short and the putative Texas subclass |
| 34 | California Song-Beverly Consumer Warranty Act for breach of express warranties, Cal. Civ. Code §§ 1791.2 and 1793.2(d) | Ortega and the putative California subclass |
| 35 | California Song-Beverly Consumer Warranty Act for breach of implied warranties, Cal. Civ. Code §§ 1791.1 and 1792 | Ortega and the putative California subclass |

6

| 36 | California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* | Ortega and the putative California subclass |
|---|---|---|
| 37 | California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* | Ortega and the putative California subclass |
| 38 | California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* | Ortega and the putative California subclass |
| 39 | California common law fraud/fraudulent omission | Ortega and the putative California subclass |
| 40 | California common law unjust enrichment | Ortega and the putative California subclass |
| 41 | Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* | Wagner, Sears, and the putative Illinois subclass |
| 42 | Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.* | Wagner, Sears, and the putative Illinois subclass |
| 43 | Illinois common law fraud/fraudulent omission | Wagner, Sears, and the putative Illinois subclass |
| 44 | Illinois common law unjust enrichment | Wagner, Sears, and the putative Illinois subclass |
| 45 | Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010 *et seq.* | Starr, Useman, and the putative Washington subclass |
| 46 | Breach of the implied warranty of merchantability, Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212 | Starr, Useman, and the putative Washington subclass |
| 47 | Washington common law fraud/fraudulent omission | Starr, Useman, and the putative Washington subclass |
| 48 | Washington common law unjust enrichment | Starr, Useman, and the putative Washington subclass |

Defendant seeks an order compelling arbitration. (ECF No. 22.) Defendant also seeks dismissal of the amended complaint under Rule 12(b)(1) and Rule 12(b)(6). (*Id.*)

Because "[s]tanding is . . . a threshold requirement for federal jurisdiction," *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016), and because the Court is required to dismiss moot claims, *see Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019), the Court will address Defendant's Rule 12(b)(1) arguments first. *See Stryker v. FCA US LLC*, No. CV 24-11538, 2025 WL 2797279, at *2 (E.D. Mich. Sept. 30, 2025) (addressing Article III standing before addressing the motion to compel arbitration).

## II.    Rule 12(b)(1)

### A.    Legal Standard

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

A facial attack "questions [] the sufficiency of the pleading." *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016). "When reviewing

8

a facial attack, a district court takes the allegations in the complaint as true." *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (quoting *Gentek*, 491 F.3d at 330).

"If those allegations establish federal claims, jurisdiction exists." *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009). But "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Rote*, 816 F.3d at 387 (quoting *O'Bryan*, 556 F.3d at 376). "This approach is identical to the approach used by the district court when reviewing a motion invoking Federal Rule of Civil Procedure 12(b)(6)." *Glob. Tech., Inc.*, 807 F.3d at 810.

A factual attack, by contrast, "raises a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Wayside Church v. Van Buren Cnty.*, 847 F.3d 812, 817 (6th Cir. 2017) (citing *Gentek*, 491 F.3d at 330). In a factual attack on subject matter jurisdiction, "no presumptive truthfulness applies to the factual allegations," *Gentek*, 491 F.3d at 330, and "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

"In considering a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, a district court may consider factual matters outside the pleadings and resolve factual disputes." *Anestis v. United States*, 749 F.3d 520, 524 (6th Cir. 2014); *see also Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (stating that the court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts").

When a court's subject-matter jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden to prove jurisdiction. *Glob. Tech., Inc.*, 807 F.3d at 810 ("[T]he party invoking federal jurisdiction has the burden to prove that jurisdiction.").

### B.   Analysis

"Under Article III of the Federal Constitution, [federal courts] can only decide 'Cases' or 'Controversies.'" *Thompson v. DeWine*, 7 F.4th 521, 523 (6th Cir. 2021) (quoting U.S. Const. art. III, § 2). "Courts have explained the 'case or controversy' requirement through a series of 'justiciability doctrines,' including, 'perhaps the most important,' that a litigant must have 'standing' to invoke the jurisdiction of the federal courts." *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 710 (6th Cir. 2015)

10

(quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)).

"Standing 'goes to [a c]ourt's subject matter jurisdiction.'" *Marks v. Schafer & Weiner, PLLC*, No. 20-11059, 2022 WL 866836, at *5 (E.D. Mich. Mar. 23, 2022) (alteration in original) (quoting *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007)). "If a plaintiff cannot establish constitutional standing, his or her claim must be dismissed for lack of subject matter jurisdiction." *Id.* (citing *Loren*, 505 F.3d at 607).

> As set forth by the Sixth Circuit,
>
> [t]o establish standing, [the plaintiff] must meet three requirements: (1) "injury in fact—a harm that is both [(a)] concrete [and particularized,] and [(b)] actual or imminent, not conjectural or hypothetical," (2) causation—a "fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant," and (3) "redressability—a substantial likelihood that the requested relief will remedy the alleged injury in fact."

*Babcock v. Michigan*, 812 F.3d 531, 539 (6th Cir. 2016). "Each requirement is 'an indispensable part of the plaintiff's case' and 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof.'" *Midwest Media Prop., L.L.C. v. Symmes Twp.*,

11

503 F.3d 456, 461 (6th Cir. 2007) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Regarding the first standing requirement of an injury in fact, "[a] concrete injury is . . . 'real and not abstract,'" *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020), and "must actually exist," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). To qualify as particularized, an injury "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

Each Plaintiff must demonstrate that they suffered an injury in fact that was both concrete and actual, causation between the injury suffered and Defendant's alleged conduct, and redressability. *Babcock*, 812 F.3d at 539. Here, Defendant argues that when there is "a NHTSA-supervised motor recall, like Recall 24V-436 here," a plaintiff lacks standing or their claims are jurisdictionally moot under *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 378 (6th Cir. 2015). (ECF No. 22, PageID.916.) Plaintiffs respond that their claims are still viable because they were injured when they overpaid for a defective product and, thus, a recall, even if successful, cannot remedy that injury that occurred at the point of purchase. (ECF No. 24, PageID.1422–1424.) Plaintiffs also argue that the

12

recall does not remedy the defect; thus, they still have an injury, and their claims are not moot. (*Id.* at PageID.1425.)

The Court finds that Plaintiffs have standing, and their claims are not moot despite the existence of a recall.

Several courts have concluded that this kind of injury–damages incurred at the point of sale and remaining until the defect is repaired—remains despite the existence of a recall. *See Crawford v. FCA US LLC*, No. 2:20-CV-12341, 2021 WL 3603342, at *2 (E.D. Mich. Aug. 13, 2021) (Murphy, J.); *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 695 (E.D. Mich. 2020) (Berg, J.); *Myslivecek v. FCA US LLC*, No. 23-12980, 2026 WL 1333763, *5 (E.D. Mich. May 13, 2026). Furthermore, unlike in *Hadley*, where the Sixth Circuit concluded that the plaintiffs "did not plead any facts in support of a diminished-value injury" and "presented no evidence of diminished value in light of the repair," *Hadley*, 624 F. App'x at 378, Plaintiffs' damages in this case are not ameliorated by a recall.

Defendant argues that it has "committed, under a NHTSA-supervised recall (Recall 24V-436), to providing each owner with a free repair, updated software, and reimbursement for any prior repairs."

(ECF No. 22, PageID.917–918.) The 24V-436 recall notice letter states that "the radio software on [the] vehicle[s] may prevent the rearview camera signal from passing through to the media screen." (ECF No. 22-16, PageID.1310; *see also* ECF No. 20, Page.ID.695.) However, the letter states that "[t]he remedy for this condition is not currently available." (ECF No. 22-16, PageID.1310; *see also* ECF No. 20, PageID.695.) As such, the Court cannot conclude that the recall is effective. Furthermore, the recall does not appear to address all variations of the Defect, such as "connectivity issues related to paired devices," "the touchscreen not recognizing Waze or Pandora," (ECF No. 20, PageID.643), "pushing the power button [ ] not turn[ing] the Uconnect 5 on or off," or the radio "randomly increase[ing] volume without any user action or command." (*Id.* at PageID.613–615.) In short, Plaintiffs have sufficiently alleged that the recall issued by Defendant is not effective.

The Court finds that Plaintiffs have standing for their claims. For similar reasons, the Court finds that Plaintiffs' claims are not moot. If events occur that "deprive the court of the ability to give meaningful relief" on a particular claim, then it is moot, and must be dismissed. *See Sullivan*, 920 F.3d at 410. The "test for mootness is whether the relief

14

sought would, if granted, make a difference to the legal interests of the parties." *Id*. "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit," the claim for relief is moot if the dispute "'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Id*. (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). Here, Plaintiffs adequately pled that the recall is not effective. Additionally, a recall would not fully compensate Plaintiffs for damages incurred during the period of time their vehicles were defective. *See Myslivecek v. FCA US LLC*, No. 23-12980, 2026 WL 1333763, at *5 (E.D. Mich. May 13, 2026).[4]

Defendant also argues that Plaintiffs lack standing "for any nationwide or other-state claims." (ECF No. 22, PageID.918.) "[W]hether a named plaintiff in an automobile defect action has Article III standing to assert claims arising under different state laws on behalf of a

---

[4] Defendant does not clearly argue that the Court should apply the doctrine of prudential mootness, but cites cases, such as *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012), which dismissed claims against vehicle manufacturers when recalls overseen by the National Highway Transportation Safety Administration addressed the defect. (ECF No. 22, PageID.917 n.12.) To the extent Defendant intended to argue that the Court should dismiss Plaintiffs' claims as prudentially moot, the Court declines to do so. As set forth above, the recall does not address all of the issues alleged by Plaintiffs.

nationwide class 'is a difficult and complicated question that has sharply divided courts in this district and across the country.'" *Fisher v. FCA US LLC*, 712 F. Supp. 3d 930, 938 (E.D. Mich. 2024) (quoting *Johnson v. FCA US LLC*, 555 F. Supp. 3d 488, 494 (E.D. Mich. 2021)). However, "[a]ll five circuits to have addressed the question hold that a plaintiff's ability to assert state law claims on behalf of out-of-state class members is a matter of representation under Rule 23, not a question of Article III standing." *Droesser v. Ford Motor Co.*, No. 19-CV-12365, 2023 WL 2746792, at *6 (E.D. Mich. Mar. 31, 2023) (citing *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011); *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 51 (1st Cir. 2018); *Mayor of Baltimore v. Actelion Pharm. Ltd.*, 995 F.3d 123, 134 (4th Cir. 2021); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 21-10335, 2022 WL 16729170 at *6 (11th Cir. Nov. 7, 2022)); *see also Fisher*, 712 F. Supp. 3d at 938. The Court follows the reasoning of these decisions.

Accordingly, Defendant's motion to dismiss pursuant to Rule 12(b)(1) on this basis is denied.

16

Finally, Defendant asserts that Plaintiffs lack standing for Class Vehicles that none of the named Plaintiffs purchased or leased.[5] (ECF No. 22, PageID.918–919.) The Court declines to consider this issue at this stage of the case. "[B]ecause Plaintiffs have standing with respect to their own vehicles . . .  the Court will defer consideration of the scope of the proposed vehicle class until class-certification." *Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635, 647 (E.D. Mich. 2021); *see also Hawes v. Macy's Inc.*, No. 1:17-CV-754, 2019 WL 1492237, at *3 (S.D. Ohio Apr. 4, 2019).

For the reasons set forth above, Defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

## III.   Motion to compel arbitration

Because the Court has jurisdiction over this suit, it must now determine if the suit is subject to mandatory arbitration.

### A.     Legal Standard

"The Federal Arbitration Act ("FAA") provides that arbitration clauses in commercial contracts 'shall be valid, irrevocable, and

---

[5] These vehicles are "Ram 2500 pickup truck, Ram Chassis Cab, or Jeep Grand Wagoneer; or any 2024 model-year Ram (any model) or Jeep (any model) or Dodge Durango; or any 2023 model-year Ram 1500 pickup truck, Ram 3500 pickup truck, Jeep Wagoneer, Jeep Compass, Dodge Hornet; or any model-year 2022 Dodge Hornet; or any 2021 Chrysler Pacifica." (ECF No. 22, PageID.919 n.17.)

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. § 2). The FAA instructs courts to enforce arbitration agreements if "the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4.

"[A]rbitration is a matter of contract," meaning "courts must 'rigorously enforce' arbitration agreements according to their terms." *In re StockX Customer Data Security Breach Litigation*, 19 F.4th 873, 878 (6th Cir. 2021) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)). "[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability.'" *Id.* (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019)). In those arbitration agreements, the agreement contains a provision that clearly and unmistakably delegates such questions to the arbitrator. *Id.* at 879–80.

Although the parties can delegate arbitrability questions to the arbitrator, the Court still has a role in determining whether arbitration should be compelled:

> *First*, we resolve any challenge that pertains to the *formation* or *existence* of the contract containing the delegation provision. If a contract exists, we proceed to step two.
>
> *Second*, we decide any remaining *enforceability* or *validity* challenge only if it would "affect the [delegation provision] alone" or "the basis of [the] challenge [is] directed specifically to the [delegation provision]."

*Id.* at 880 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71–72 (2010)). Further, the Court must "apply ordinary state-law principles that govern the formation of contracts." *Id.* at 881 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

When determining if the existence of an arbitration agreement is at issue, the Court "applies the standard for summary judgment" and the movant "must initially carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists." *Id.* at 880–81. If the making of an agreement to arbitrate is at issue, the Court "shall proceed summarily to the trial thereof." 9 U.S.C. § 4. However, if the movant "presents evidence from which a reasonable jury could find all required elements of a contract with respect to the alleged arbitration agreement, and a party opposing arbitration fails to present evidence of a genuine dispute of material fact as to the validity of the agreement to arbitrate," *Memmer v. United Wholesale Mortg.*, No. 23-CV-11261, 2023

19

WL 8818298, at *3 (E.D. Mich. Dec. 18, 2023) (cleaned up) (citing *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *Boykin*, 3 F.4th at 839), then a trial is unnecessary and the parties should proceed to arbitration.

## B.   Analysis

Defendant argues that Plaintiffs are subject to mandatory arbitration due to Warranty Information booklets that were allegedly included with the purchased or leased vehicles. (ECF No. 22, PageID.914.) The booklets include a "voluntary binding arbitration provision" which states,

> If your concern or dispute is not resolved within 60 days, you agree that any dispute arising out of or relating to any aspect of the relationship between you and FCA US LLC will not be decided by a judge or jury but instead by a single arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules in effect at the time you signed the Agreement to Arbitrate. This includes claims arising out of your warranty and claims arising before this agreement, such as claims related to statements about our products.

(*See, e.g.*, ECF No. 22-3, PageID.953; *see also* ECF Nos. 22-4, 22-5, 22-6, 22-7, 22-8, 22-9, 22-10, 22-11, 22-12 (warranties for other vehicles, which include the same arbitration provision).) According to Defendant, the

20

provision's reference to the American Arbitration Association's Consumer Arbitration Rules indicates that disputes on arbitrability are delegated to the arbitrator. (ECF No. 22, PageID.915.) The Sixth Circuit has held that such reference to the AAA's Consumer Arbitration Rules "provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *StockX*, 19 F.4th at 878 n.2 (quoting *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020)). As such, the Court's review of arbitrability is limited to challenges to "the delegation provision specifically" or "claims that the agreement to arbitrate was never concluded." *Id.* at 880 (cleaned up).

As an initial matter, the Court must decide which state law should be used to determine whether a contract was formed. *See id.* at 881 ("We 'apply ordinary state-law principles that govern the formation of contracts.'" (quoting *First Options*, 514 U.S. at 944)). The Court will apply Michigan law.[6]

---

[6] Neither party conducts a choice-of-law analysis, and both parties cite to cases that use a variety of state laws on contract formation, including Michigan. There is no indication given by the parties that any applicable state's law on mutuality of agreement in contract formation is meaningfully different from another state's, nor do the parties provide any argument or justification for the use of another state's contract laws. As such, the Court will proceed with Michigan law.

The parties dispute the formation of a contract to arbitrate. A valid contract requires "1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *StockX*, 19 F.4th at 881 (quoting *AFT Mich. v. State*, 866 N.W.2d 782, 804 (2015)). Here, Plaintiffs argue that the arbitration agreements lacked mutuality of agreement. (ECF No. 24, PageID.1416.)

Mutuality of agreement requires "offer and acceptance." *StockX*, 19 F.4th at 881 (citing *Bodnar v. St. John Providence, Inc.*, 933 N.W.2d 363, 369 (2019); *Kloian v. Domino's Pizza, L.L.C.*, 733 N.W.2d 766, 770 (2006)). "[T]here must be mutual assent—i.e., a meeting of the minds on all the essential elements of the agreement." *Id.* (cleaned up). "Whether there was a 'meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.'" *Id.* (citing *Kloian*, 733 N.W.2d at 771).

Plaintiffs contend that they never agreed to arbitrate and there is no indication that there was "mutuality of agreement" between Plaintiffs and Defendant. (ECF No. 24, PageID.1415–1417.) Plaintiffs submit declarations stating that they did not receive the booklet before or during

the transaction, the sales representative did not reference the booklet before or during the transaction, and they did not view or agree to the provision. (*See* ECF Nos. 24-3, 24-4, 24-5, 24-7, 24-8, 24-9, 24-11, 24-12, 24-13, 24-14, 24-15, 24-16, 24-17, 24-18, 24-19, 24-20.) Some Plaintiffs also claim that they never received the booklet. (*See, e.g.*, ECF No. 24-16, PageID.1499.) Defendant responds that arbitration should still be compelled because all Plaintiffs except Baleanu, Boonie, and Silver "plead that they reviewed and relied on their vehicles' Monroney labels (window stickers) in making their vehicle purchase decisions," which states:

> WARRANTY COVERAGE
>
> 5-year or 60,000-mile Powertrain Limited Warranty.
>
> 3-year or 36,000-mile Basic Limited Warranty.
>
> Ask Dealer for a copy of the limited warranties or see your owner's manual for details.

(ECF No. 27, PageID.1536.) According to Defendant, this label "inform[s] potential purchasers the vehicles are being sold pursuant to written warranties, and direct[s] them to either ask the dealership for a copy or review the vehicle's owner's manual to view their terms." (*Id.*) Defendant also claims that Plaintiffs were otherwise on notice of the existence of

23

such terms or conditions because "[i]t is difficult to imagine how any modern consumer could plausibly claim they had no idea automobiles are sold with warranties, or that those warranties include written terms and conditions." (*Id.* at PageID.1538.) Defendant contends that some Plaintiffs cannot claim that they lacked notice of the warranties' terms because they "plead they used the warranties to obtain repairs and service at FCA US dealerships." (*Id.* at PageID.1538–1539.) Finally, Defendant claims that the vehicles that Plaintiffs purchased generally include copies of the booklet. (ECF No. 22-2.)

The Court first notes that the booklet's arbitration provision references signing an agreement to arbitrate or a form acknowledging it. (*See* ECF No. 22-3, PageID.953 ("You may opt out of arbitration within 30 days of taking delivery of the vehicle and signing the Arbitration Acknowledgment Form at the dealer."); *see also id.* (stating that the applicable Consumer Arbitration Rules are those "in effect at the time you signed the Agreement to Arbitrate").) However, there is no evidence that Plaintiffs signed any form or agreement referencing arbitration, nor does either party reference an Arbitration Acknowledgement Form or an Agreement to Arbitrate. Defendant alludes to an "additional arbitration

24

agreement executed during the purchase of their vehicles" that are maintained by "third-party dealerships" (ECF No. 22, PageID.915 n.10), which may reference those signed Forms or Agreements related to arbitration.

The Court also notes that Defendant's initial argument regarding arbitration is almost perfunctory. Defendant states that the vehicles' warranties "include a mandatory arbitration provision," (ECF No. 22, PageID.914–915), and provides a declaration stating that the booklet is generally included with those vehicles. (ECF No. 22-2.) However, "merely stating that the Arbitration Provision *exists*, without more, does not necessarily equate to a showing that Plaintiffs *assented* to the Arbitration Provision." *Stryker*, 2025 WL 2797279, at *5. Additionally, Defendant does not present evidence that Plaintiff's vehicles actually came with copies of the booklet, which several Plaintiffs dispute, (s*ee* ECF No. 24-3, PageID.1460 ("To my knowledge, I have never received a copy of the Warranty Information Booklet.")), nor does Defendant present evidence that Plaintiffs failed to opt out of arbitration. Although Defendant provides additional information in its reply brief, Defendant's initial showing failed to carry "its initial burden to produce evidence that would

allow a reasonable jury to find that an agreement to arbitrate exists." *Stryker*, 2025 WL 2797279, at \*6.

Additionally, other courts confronted with substantially similar (if not identical) facts have found that Defendant failed to "carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists," *StockX*, 19 F.4th at 880–81, and that the plaintiffs' mutual assent is an issue of fact. *See Frisch v. FCA US LLC*, No. 2:24-CV-10546, 2025 WL 1592935, at \*7–8 (E.D. Mich. June 5, 2025); *Stryker*, 2025 WL 2797279, at \*6. The Court finds the same here.

Defendant's argument that Plaintiffs had notice of the warranties and thus had adequate notice and assented is not convincing. Generally, acceptance to a contract can be manifested by "inaction or continued action" when it is "coupled with adequate notice." *Frisch*, 2025 WL 1592935, at \*4. Adequate notice does not require actual notice, but courts have concluded that "there must be evidence that the offeror conveyed to the offeree that it was extending an offer to arbitrate." *Id.* at \*5. For example, in *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411 (6th Cir. 2011), the Sixth Circuit concluded that the plaintiff had not received adequate notice in order for there to be an offer and acceptance.

The defendant in *Hergenreder* argued that the plaintiff had agreed to arbitration because the plaintiff had signed an acknowledgement that she had read and understood the terms of the employee handbook, the employee handbook contained a sentence stating, "*Dispute Resolution Process* Please refer to the Eby Companies Dispute Resolution Procedure (DRP) for details," and the DRP "makes clear" that all employees must submit to binding arbitration if they bring claims against the defendant. *Hergenreder*, 656 F.3d at 414. The Sixth Circuit concluded that this "simple reference in the Handbook" did not constitute adequate notice and was not a "manifestation of willingness to enter into a bargain." *Id.* at 418.

The court in *Frisch* concluded in a detailed opinion that Defendant's evidence regarding notice was similar to that in *Hergenreder* and thus insufficient. *Frisch*, 2025 WL 1592935 at *7. Like *Frisch*, the Court is not convinced that an offer and acceptance have been sufficiently shown. Regarding certain Plaintiffs' reviewing and relying on the Monroney labels on the windows, that fact does not "demonstrate[ ] [that] FCA notified Plaintiffs of the agreement to arbitrate contained therein," similar to the employer in *Hergenreder*. *Id.* at *7. The Monroney label

provides notice that there is, in fact, a warranty, but does not indicate that there are further contractual terms being offered and that a purchaser must opt out or be bound by those terms. The label's statement, "Ask Dealer for a copy of the limited warranties or see your owner's manual for details," (ECF No. 27, PageID.1536), cannot be construed as a "manifestation of willingness to enter into a bargain." *Hergenreder*, 656 F.3d at 418.[7]

Defendant also argues that some Plaintiffs—specifically Baleanu, Boonie, Silver, and Ortega—"plead they used the warranties to obtain repairs and service at FCA US dealerships," thus demonstrating that they had notice of the warranty's terms. (ECF No. 27, PageID.1538–1539); *see Frisch*, 2025 WL 1592935, at *7. But the Court is not convinced that "evidence of exercising the warranties is enough to bind the Plaintiffs to an arbitration provision they had no reason to know would be contained therein and cannot reasonably be expected to learn about before the time to opt-out has expired." *Id.* at *7 n.4.

---

[7] The significance of the Monroney labels is not clear to the Court. Unlike in *Hergenreder*, where notice of the defendant's intention to enter into a bargain could have conceivably been provided by a handbook that the plaintiff signed an acknowledgment that she read, Defendant does not explain how the Monroney label could constitute an invitation to enter into an agreement or notice thereof.

In conclusion, there is a genuine dispute of fact regarding whether the agreement to arbitrate was ever concluded. Plaintiffs have set forth evidence that they either did not know about the Arbitration Provision or did not agree to it, and Defendant has not sufficiently demonstrated that Plaintiffs were on notice of the Arbitration Provision. For those reasons, Defendant's motion to compel arbitration is denied.

## IV.   Conclusion

For the reasons set forth above, the Court DENIES Defendant's motion to dismiss pursuant to Rule 12(b)(1) and DENIES WITHOUT PREJUDICE Defendant's motion to compel arbitration.

The Court recognizes that limited discovery on formation of the arbitration agreement is necessary. (*See* ECF No. 33, PageID.1636 (Defendant's response to Plaintiffs' notice of supplemental authority).) As such, the parties are ORDERED to conduct limited early discovery to determine the existence of any relevant arbitration agreements and the parties' potential rights to invoke those arbitration agreements, including but not limited to whether Plaintiffs are "subject to additional arbitration agreements executed during the purchase of their vehicles." (*See* ECF No. 22, PageID.915 n.10.) The deadline to complete arbitration-

29

related discovery is September 10, 2026. After this deadline, the parties shall appear for a status conference to be set by the Court to discuss the status of the parties' arbitration-related discovery and, if appropriate, to set a briefing schedule for any proposed renewed motion to compel arbitration and/or motion to dismiss.

IT IS SO ORDERED.

Dated: June 16, 2026                    s/Judith E. Levy
Ann Arbor, Michigan                     JUDITH E. LEVY
                                        United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 16, 2026.

                                s/William Barkholz
                                WILLIAM BARKHOLZ
                                Case Manager